## Johnson v. International Shoe Company.

(Decided March 15, 1929.)

C. F. SPENCER and GRANNIS BACH for appellant.

O. H. POLLARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS—Reversing

The International Shoe Company sued R. H. Johnson on account for $477.42 for shoes sold and delivered on different dates between December 31, 1925, and March 11, 1926. The defendant admitted the indebtedness, but in an answer and counterclaim asserted that he had been engaged in the mercantile business in Jackson, Ky., for a number of years. In 1920, at the solicitation of plaintiff's agent, he purchased a bill of shoes from plaintiff, with the agreement and understanding that he would work up a trade therein, and that plaintiff would not sell its product to any other merchant in Jackson, so long as defendant carried its line of shoes. This agreement was indorsed in writing on the order for the first bill of shoes and accepted by plaintiff. Thereafter defendant introduced plaintiff's shoes in the town of Jackson, and established a large trade therein, and handled same continuously until the fall of 1925, at which time he purchased from it shoes costing several thousand dollars, including those for which the account sued on was rendered. At this time he was fully stocked with plaintiff's goods, whereupon plaintiff, in violation of the contract, sold its product to divers other merchants in Jackson and Breathitt county. Those merchants sold plaintiff's product to the trade that defendant had established, and thereby curtailed his business to such an extent that he could not dispose of the goods he had purchased from plaintiff, and these became shelf-worn and had deteriorated in value to the extent of $2,500. The court sustained a demurrer to the answer as amended, and, defendant failing to plead further, dismissed his counterclaim and

rendered judgment for the amount of plaintiff's claim. Defendant appeals.

It is well settled that parties may contract for exclusive territory in which to exercise a selling agency, and where the principal invades such territory the measure of damage is the amount of profits, commissions, or discounts of which the agent is deprived by the action of the principal, not including, however, profits "that are too remote or merely speculative." White Co. v. W. P. Farley & Co., 219 Ky. 66, 292 S. W. 472, 52 A. L. R. 541; Long v. O'Bryan, 91 S. W. 659, 28 Ky. Law Rep. 1062; Sparks v. Reliable Dayton Motor Car Co., 85 Kan. 29, 116 P. 363, Ann. Cas. 1912C, 1251; Schiffman v. Peerless Motor Car Co., 13 Cal. App. 600, 110 P. 460, and cases cited in the White case and note to the Sparks case.

It will be observed, however, that the alleged contract was to continue only so long as defendant continues to use plaintiff's goods, and that it imposed no obligation upon him to make any further purchases. Being thus indefinite as to time and unilateral in its terms, either of the parties was authorized to terminate it at any time without incurring damage. Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467; Dysart v. Dawkins Log & Mill Co., 222 Ky. 415, 300 S. W. 906. But, although lacking in mutuality and indefinite as to time, nevertheless it was capable of performance, and, if acted upon and executed in whole or in part, the liabilities and obligations arising out of such performance are enforceable.

Thus in Victoria Limestone Co. v. Hinton, 156 Ky. 674, 161 S. W. 1109, we said: "As to a want of mutuality or unity of obligation, it is equally apparent that a want of mutuality is no defense in the case of an executed contract. Des Moines Valley R. Co. v. Graff, 27 Iowa, 99, 1 Am. Rep. 256. In the case at bar, therefore, either party had the right to terminate the contract at any time without any further liability; but, so long as the parties worked under the contract, both are liable thereunder."

In the late case of Salyers v. Kenmont Coal Co., 226 Ky. 655, 11 S. W. (2d) 705, we said:

> "Here we have a case of an indefinite continuing contract, where the services, if the allegations in the petition be true, were actually performed before the contract was terminated by the will of either

party. A person who has performed services under such a contract, for which he has not been paid, may maintain an action for the services in accordance with the terms of the contract.''

True, appellant was not bound to purchase, and he could not have required appellee to furnish him, any goods under the contract. But he is not seeking this relief, nor is he seeking damage for appellee's failure in this particular. On the contrary, he is saying it furnished him goods *under the contract,* and destroyed their salable value by furnishing the same goods to his competitors before he had a reasonable time within which to dispose of his purchase, and that this was in *violation of the terms* of the contract. These facts, if true, bring this case within the reasoning of Victoria Limestone Co. v. Hinton, and distinguish it from the long line of decisions cited by appellee, in which the aggrieved party was complaining of his adversaries' failure to furnish him goods under an indefinite or unilateral contract.

The next insistence is that the contract pleaded was within the statute of frauds (Ky. Stats. sec. 470, subsec. 7), in that it was in parol and not to be performed within one year. As to this there is an allegation that it was in writing indorsed on the first order for goods. We may assume, however, as is claimed by appellee, that a written contract is not sufficiently pleaded as the basis of the claim, and further assume that the contract could not have been performed within a year; but nevertheless the statute would not be applicable to rights arising under a mutual performance of the contract. See Dysart & Salyers cases, supra.

It follows that the court erred in overruling the demurrer to defendant's answer as amended.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.