OIL WORKERS INTERNATIONAL UNION, LOCAL NO. 463, et al. v. TEXOMA NATURAL GAS CO.

No. 10971.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1944.

Rehearing Denied Jan. 3, 1945.

Lindsay P. Walden, of Ft. Worth, Tex., for appellants.

D. H. Culton, of Amarillo, Tex., and J. J. Hedrick, of Chicago, Ill., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Controversies having arisen with respect to the rights of the parties under a contract entered into by the appellee and Oil Workers International Union, Local No. 463, as bargaining agent for appellee's employees, appellee brought this suit under the Declaratory Judgment Act[1] to determine:

1. Whether the seniority status of one R. J. Orr, an employee, was fixed by the seniority list prepared, agreed to, and posted in accordance with the contract;

2. Whether the appellee, in whom exclusive management was vested, subject to the provisions of the contract, had the right under the contract to change from a 40-hour week to a 48-hour week without negotiating an amendment to the contract with the Union;

3. Whether those questions were appropriate matters for arbitration under the arbitration provisions of the contract; and

4. Whether an award of a board of arbitrators, presuming to act under the contract over the protest of appellee, was invalid as an exercise of jurisdiction by the arbitrators over matters not arbitrable.

The first controversy arose when the appellee, on October 16, 1942, returned Ralph J. Orr from a temporary supervisory position to the position of main engineer in its engine room. Appellants contended that appellee under the contract had no right to permit Orr to fill the job of main engineer as he was not next in line under the seniority provisions; appellee contended that in so doing it acted in accordance with the provisions of the contract. The second controversy arose on October 25, 1942, when appellee extended its work-week from 40 hours to 48 hours. Appellants asserted that the length of the work-week was a subject for negotiation, and appellee replied that the question was one solely of management.

In November of 1942, appellants informed appellee that they desired to arbitrate both issues pursuant to article 12 of the contract, and appellee declined on the ground that said matters were not arbitrable. Appellants then certified the entire matter to the Eighth Regional War Labor Board, acting as the duly authorized agent of the National War Labor Board, and after a hearing that Board declined to accept jurisdiction of the merits of the disputes, but did direct the parties to arbitrate as provided in the contract. Thereafter, over the protest of the appellee, the two issues were submitted to a board of arbitrators consisting of three members selected as provided in the contract, and in due course the said arbitrators issued a majority opinion directing that employee Orr be removed as main engineer and that

---

[1] 28 U.S.C.A. § 400.

the company negotiate with the Union regarding the extension of the work-week. Some four days later, appellee filed this suit for a declaratory judgment to interpret the contract as to the issues raised, and to pass on the validity of the award. The Workmen's Committee of the Union advised the National War Labor Board of the suit, and requested it "to take what action it may deem necessary to force the company to comply" with the award of the arbitrators. A few days later, the workmen's committee filed a petition for a strike vote to enforce said award.

The court below, as appellee succinctly states, found:

"(1) That the seniority status of [the] employee was properly fixed by the list prepared, accepted and posted in accordance with the contract; that this status was a substantive right of Orr, and that the company did not violate the contract in recognizing that status;

"(2) That under the contract a determination of the length of the work week was for management alone, subject to the requirement that time and one-half be paid for all hours worked in excess of 40 in any one week; and, therefore, that the company did not violate the contract in changing from a 40 hour to a 48 hour week;

"(3) That since both the seniority right of Orr and the company's right to determine the length of the work week were fixed by the contract, neither matter was arbitrable under the arbitration provisions of the contract; that the arbitration provisions related only to complaints and grievances of individual employees and the protection afforded under the contract, with no relation whatsoever to the possible desire of one or many employees for changes in the contract; and

"(4) That it was the function of the court to determine whether the arbitration award was valid; that it was invalid because the board had attempted to arbitrate matters not arbitrable under the contract and because the 'relief' which it sought to grant was beyond its powers; that it required certain actions which could not be done without amending the contract, and this was a matter for negotiation, not arbitration."

Appellants in this court do not complain of the interpretation thus given the con-

tract by the court below, nor do they complain of the determination that the award of the board of arbitrators was invalid. Their contentions are:

1. That the National War Labor Board was vested with jurisdiction to determine the matters in controversy, and that court action before that Board acted was premature.

2. That the contract between appellee and the Union had expired, and that, therefore, the arbitration award was moot.

We shall treat these issues in inverse order.

The contract between the appellee and the Union as bargaining agent became effective September 1, 1942, and provided that it should remain in effect from year to year until terminated by written notice "given by either party to the other at least thirty days prior to the termination of any such period." Under date of July 30, 1943, the secretary of the Union wrote appellee as follows: "This is to advise you that we desire to meet with your company on Monday, September 6, 1943, at ten o'clock, to negotiate amendments to the present collective bargaining contract."

In reply, appellee asked whether the letter was "intended to serve as notice of termination of the contract between the Union and the Company." To this letter the secretary of the Union replied: " * * I wish to say that we did not intend to cancel the entire agreement, but we do wish to make certain amendments to the contract for the purpose of clarification."

On October 11, 1943, subsequent to this correspondence and to the termination of the first year period fixed in the contract, the parties participated in the arbitration proceeding under question, and the secretary of the Union acted as one of the arbitrators. On October 20, 1943, the arbitrators directed appellee to incorporate certain provisions in "a supplemental agreement to be attached to the main agreement," and ordered appellee to "abide by the terms of the collective bargaining agreement in its future relations with its employees."

A party to an agreement may exercise his option to cancel it, but he may not, when unauthorized by the agreement and in the absence of consent of the other party, cancel it in part.[2] The correspond-

2 In Black on Rescission and Cancellation, 2nd Ed., § 513, the learned author states: "Where a contract reserves to one of the parties the right to rescind it, and

ence between the parties, as well as their actions subsequent to the first year period, clearly demonstrates that neither considered the contract terminated, and we find nothing in the written notices or in the acts of the parties thereafter evidencing a desire to terminate the contract; nor do we think that the written notices had that effect. We agree with the court below that the contract is in force and effect.

■ The National War Labor Board is not, under the law, vested with judicial functions, nor does it have the power to enforce its determinations, called "directives," upon the parties to a controversy before it.[3] It is not a substitute for the courts, and the pendency of a controversy before it is not a bar to a suit in the courts.[4] This limitation upon its powers is recognized by it, for in its statement of its public policy respecting awards, dated September 10, 1943, it said: "The Board's determination of the matter will constitute a final adjudication unless and until a tribunal of competent jurisdiction issues rulings contrary to those of the Board. The action of the Board in no way prejudices the right of a party to appeal to a Court of competent jurisdiction for a judicial declaration of the rights and obligations flowing from the award. The Board's order will be made expressly subject to discontinuance should a Court render a decision contrary to the conclusions of the Board."

■ The Declaratory Judgment Act should be liberally construed, Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924, certiorari denied 312 U.S. 698, 61 S.Ct. 741, 85 L.Ed. 1133; and where a justiciable controversy exists between parties who are citizens of different states with regard to rights having a value in excess of $3,000, as here, the United States District Courts are vested with jurisdiction. The court below found that the controversy between the parties related to their legal rights and liabilities under their contract; that the parties had taken adverse positions with respect to their respective rights and obligations; that, therefore, a justiciable controversy existed, appropriate for judicial determination under the Declaratory Judgment Act.[5] We agree. An employer may establish the seniority rights of an employee in dispute with other employees, as well as general rights which their contract relationship establishes, without waiting to be sued for breach or for damages or for specific performance, and thus secure an "interpretation of the contract during its actual operation" and stabilize an "uncertain and disputed relation." [6] Exhaustion of the administrative remedies granted by the War Labor Disputes Act, 50 U.S.C.A.Appendix § 1501 et seq., and Executive Order No. 9017, of January 12, 1942, 50 U.S.C.A.Appendix § 1507 note, to employer and employee is not a prerequisite to the bringing of a court action by either party for an alleged violation by the other of a labor agreement.[7]

The judgment appealed from is correct. It is accordingly affirmed.

also prescribes the mode in which such right shall be exercised, or provides that certain specified acts shall be done by that party as a condition upon his right to rescind, it must be strictly followed, and the party cannot rescind in any other mode nor without complying with the conditions." King v. Towsley, 64 Iowa 75, 19 N.W. 859; Avery Planter Co. v. Peck, 80 Minn. 519, 83 N.W. 455, 1083; Ward v. American Health Food Co., 119 Wis. 12, 96 N. W. 388; Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S.W. 699.

[3] Baltimore Transit Co. v. Flynn, D.C., 50 F.Supp. 382; Employers Group of Motor Freight Carriers v. National War Labor Board, App.D.C., 143 F.2d 145.

[4] Lehigh Coal & Nav. Co. v. Central R. Co. of New Jersey, D.C., 33 F.Supp. 362; Adams v. New York, C. & St. L. R. Co., 7 Cir., 121 F.2d 808. The record reveals, however, that no proceedings were pending before the Board when this suit was filed.

[5] Cf. Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924; Rex Co. v. International Harvester Co., 5 Cir., 107 F.2d 767; Gaskill v. Thomson, 8 Cir., 119 F.2d 105; A. H. Belo Corp. v. Street, D.C., 35 F.Supp. 430; Id., D.C., 36 F. Supp. 907, affirmed Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L. Ed. 1716; Lehigh Coal & Nav. Co. v. Central R. of New Jersey, D.C., 33 F.Supp. 362.

[6] Borchard, Declaratory Judgments, 2nd Ed., 546.

[7] Cf. Adams v. New York, C. & St. L., R. Co., 7 Cir., 121 F.2d 808; Moore v. I. C. R. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Pennsylvania R. Co. v. United States R. Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536.