**UNITED STEEL WORKERS OF AMERI-
CA et al. v. SHAKESPEARE CO. et al.**

Civil Action No. 1231.

United States District Court
W. D. Michigan, S. D.

Feb. 14, 1949.

Herschel W. Carney, of Kalamazoo, Mich., Arthur J. Goldberg, Frank Donner, and Thomas E. Harris, all of Washington, D. C., for plaintiffs.

John C. Howard, of Kalamazoo, Mich., and Clarence N. Sessions, of Muskegon, Mich., for defendants.

STARR, District Judge.

In order that the record will be complete, I shall briefly narrate the factual background of this suit.

On July 16, 1947, the plaintiff union and the defendant companies entered into a collective-bargaining agreement, in which the defendants recognized the union as the collective-bargaining agent for their employees, under certification by the National Labor Relations Board. This agree-

ment was in the usual form and provided relative to the maintenance of union membership, check-off, hours of work, wages, holidays, seniority, vacations, grievances, safety, health, shop rules, and other matters. Article 15 of the agreement provided:

"The terms and conditions of this agreement shall continue in force and effect for a period of one year from the date of the signing and thereafter until modified, amended, or terminated in accordance with the following paragraph: This agreement may be modified, amended or terminated by giving notice thereof in writing, thirty days prior to the date of its expiration, or a thirty day notice in writing anytime thereafter.

"Notice in accordance with the above shall be given by registered mail, shall be completed by and at the time of mailing, and if given by the Company shall be addressed to the United Steelworkers of America, Commonwealth Bldg., Pittsburgh 22, Pa., and if given by the Union be addressed to the Company at Kalamazoo, Michigan."

The parties continued their relations under this collective-bargaining agreement, and on May 8, 1948, the plaintiff union notified the defendants by letter as follows:

"Pursuant to the provisions of the Labor-Management Relations Act, 1947, you are hereby notified that the union desires to modify the collective bargaining contract dated July 16, 1947, now in effect between the company and the union as of July 16, 1947.

"The union offers to meet with the company for the purpose of negotiating a contract containing modifications. I will contact you to arrange a mutually satisfactory time and place for such meeting.

"You are further advised that while this notice is given under the Labor-Management Relations Act, 1947, the undersigned waives none of its rights and expressly reserves all objections to the constitutionality, validity and applicability of the Labor-Management Relations Act, 1947, and of each and all of the provisions of said Act."

On June 14, 1948, plaintiff union wrote the defendants as follows:

"In accordance with Article 15, entitled Termination of the Agreement, dated July 16, 1947, between the Shakespeare and Shakespeare Products Companies and the United Steelworkers of America, CIO, you are hereby notified that the Union wishes to meet with the Company for the purpose of negotiating a new contract containing modifications."

In response to the union's letter of June 14th, which I have just read, the defendants replied by letter on June 15th as follows:

"This is to acknowledge receipt of your letter dated June 14th, 1948, notifying the Shakespeare Companies that the union wishes to meet with the company for the purpose of negotiating modifications in the existing contract.

"This is to advise you that the company is ready to meet with you, and requests that you set a date convenient to yourself during the week beginning with June 28th. Please advise the writer of the date most convenient to you."

The parties began negotiations for modification and amendment of their collective-bargaining agreement in June, 1948, and continued their negotiations until the latter part of August, 1948. However, their negotiations were unsuccessful, as they were apparently unable to mutually agree upon any modification of the agreement. In their amended complaint plaintiffs alleged in part:

"On August 26, 1948, the companies gave to the union a final offer. Plaintiff Clarence A. Jackson stated that he would submit said final offer to a union meeting. Before said meeting was called defendant companies posted said final offer in writing upon the bulletin board and, without giving plaintiff Clarence A. Jackson (a union representative) a fair chance to present said offer to a union meeting. Said final offer was submitted to a union meeting on or about August 31 and rejected. Between August 31 and September 3 said Clarence A. Jackson attempted to contact various officers of the defendant companies but was

always informed said officers had left town. As a result of said breakdown of negotiations and said refusal of said company officers to further meet with plaintiffs, the said plaintiffs on September 7 called a strike at defendants' plant, which said strike is still in progress."

On September 9, 1948, two days after the strike was called, defendants gave the union a written notice purporting to terminate and cancel the July 16, 1947, collective-bargaining agreement 30 days from the date of mailing the notice, that is, on October 9, 1948. The next day, September 10th, and prior to the expiration of the 30-day notice of termination, the defendants mailed to all their employees, including members of the union, a letter stating in part:

"We have terminated the contract with the United Steelworkers of America and have further declined to recognize them as bargaining agent for any of our employees because we do not believe that they represent a majority of our employees.

"This means as of now all bargaining and negotiating has been discontinued except on an individual basis. * * *

"Those of you wishing to work have the right to work, and this right will be protected. * * *

"The wage offer made by the company has been put into effect September 7, 1948."

On October 9, 1948, the defendants mailed to their employees, including members of plaintiff union, another letter which read as follows:

"This letter is in regard to the Shakespeare Group Life, Accidental Death and Dismemberment, Hospital and Surgical Expense Insurance carried for the benefit of you and your dependents.

"As you know, the premiums on all of this insurance have for many years been paid wholly by the company without any cost whatsoever to you.

"During your absence from work, your insurance has been kept in full force and effect by the company, but it cannot be expected that the company continue to do so indefinitely while you remain away from work. Much as we dislike to see your insurance discontinued, we hereby notify you that effective Wednesday, October 13, 1948, the insurance written for your benefit, described earlier in this letter, is being cancelled.

"We are told by the local representative of the insurance company carrying this risk that you may be reinstated immediately upon your return to work."

The strained relations between these parties continued, and on November 16, 1948, plaintiff union and representatives and members of the union filed complaint against defendants in the present suit. They alleged, among other things, that the collective-bargaining agreement of July 16, 1947, had not been legally terminated by defendants' 30-day notice of September 9, 1948; that under Section 8(d) of the Labor Management Relations Act, 29 U.S.C.A. § 158(d), the agreement could only be terminated by a 60-day notice in writing; that defendants had not notified the Federal mediation and conciliation service and the State mediation service of the existence of a labor dispute as required by Section 8(d) of the Labor Management Relations Act; that the agreement continued in force and effect after the expiration of the one-year period mentioned therein; that it was still in full force and effect; and that defendants had violated the terms of the agreement. In their complaint plaintiffs asked the court to determine that the agreement was still in force and binding upon the parties, and also for injunctive relief restraining defendants from violating the terms and provisions thereof. On December 7th defendants filed motion to dismiss the complaint. That motion was never heard for the reason that on January 8th of this year plaintiffs filed an amended complaint in which they asserted a new theory of action and prayed for relief entirely different from that asked for in the original complaint. In this amended complaint plaintiffs asked for a judgment determining the rights of the parties under their collective-bargaining agreement; for a determination that defendants had wrongfully terminated the agreement; and for damages alleged to have been sustained by the union and its members by reason of

defendants' alleged breach of the agreement. On January 12th the defendants filed motion to dismiss the amended complaint, primarily on the ground that it failed to state a claim upon which relief could be granted and that the court was without jurisdiction to grant the relief requested, for the reason that the National Labor Relations Board has exclusive jurisdiction of the matters alleged.

The principal questions raised by the motion to dismiss are: (1) Does the court have jurisdiction of the matters alleged in the amended complaint; and (2) if it is determined that the court has jurisdiction of the matters alleged, then does the complaint state a claim upon which relief can be granted?

It should be kept in mind that in their amended complaint plaintiffs do not ask for injunctive relief against so-called unfair labor practices or for any other form of injunctive relief. They ask only for a determination of their rights under the collective-bargaining agreement in question and for a determination of their damages claimed to have been sustained as a result of defendants' alleged violation of the agreement. Plaintiffs' amended complaint and their claim of jurisdiction are based on Title III, § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), which provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The defendants cite and rely upon the cases of Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183, and International Longshoremen's & Warehousemen's Union v. Sunset Line & Twine Co., D.C., 77 F.Supp. 119, as supporting their contention that this court is without jurisdiction of the present case. However, in those cases the plaintiffs asked for injunctive relief, and the courts correctly held that proceedings to enjoin unfair labor practices were within the exclusive jurisdiction of the National Labor Relations Board, and that a Federal district court did not have jurisdiction to enjoin unfair labor practices. Furthermore, those cases did not involve alleged violation of collective-bargaining agreements and, therefore, were not within the purview of Section 301(a) of the Labor Management Relations Act. The theory on which those cases were based, and the factual situations involved, clearly distinguish them from the present case.

In the case of United Packing House Workers v. Wilson & Co., D.C., 80 F.Supp. 563, cited by defendants, the plaintiffs alleged violation of a contract but asked for injunctive relief and for damages. The court, in denying injunctive relief, expressly stated, 80 F.Supp., at pages 568–570:

"The purpose and effect of subsection (a) (of Sec. 8) is to confer on the District Courts jurisdiction in suits for damages between employers and labor organizations for violation of contracts. * * *

"If the plaintiff can plead and establish a claim for damages growing out of a breach of its contract, Sec. 301(a) of the Labor Management Relations Act of 1947 confers jurisdiction upon this court to hear and determine such a suit."

These statements in the Packing House Workers case are directly applicable to the situation in the present case, in which the plaintiffs in their amended complaint alleged in substance that the collective-bargaining agreement of July 16, 1947, is still in force and effect; that defendants violated the terms and provisions thereof; and that plaintiffs sustained damages as a result of such violation. It clearly appears that this is a suit "between an employer and a labor organization" for alleged violation of a collective-bargaining contract, and, therefore, it is within the purview of Section 301(a) of the Labor Management Relations Act. The court accordingly concludes that it has jurisdiction of the matters alleged in the complaint.

The next question is whether or not the amended complaint states a claim upon which relief may be granted. Plaintiffs set forth the collective-bargaining agree-

ment of July 16, 1947, and allege that it has never been modified, amended or legally terminated and is still in force and effect. The defendants contend that the union's letter of June 14, 1948, effected the termination of the agreement at the expiration of the one-year period on July 16, 1948, and forestalled any automatic continuation of the agreement thereafter. In its letter the union notified the defendants that it wished to meet with them for the purpose of negotiating a new contract containing modifications. Therefore, the court must determine from the wording of the agreement and the conduct of the parties whether the agreement ended at the expiration of the one-year period or if it automatically continued thereafter.

■ Article 15 of the agreement provided that it should continue for a period of one year from the date thereof, and thereafter until modified, amended or terminated. It further provided that it could be modified, amended or terminated by written notice 30 days prior to its expiration or by 30-days' written notice at any time thereafter. The wording of Article 15 clearly indicates that the agreement would continue after its expiration date and until it was actually modified or amended by agreement, or until terminated by notice by one of the parties. It did not provide that it would be terminated by a mere notice of a desire to modify or amend. The agreement here could be modified or amended only by mutual, bilateral agreement between the parties. The parties never arrived at any mutual agreement of modification or amendment, and, therefore, according to its terms the agreement continued until it was terminated. According to its terms it could be terminated only by 30-days' written notice by either party. The only notice given purporting to terminate the agreement was defendants' notice on September 9, 1948. It is unnecessary at this time, in considering defendants' motion to dismiss, to determine whether, in view of Section 8(d) of the Labor Management Relations Act, defendants' 30-day notice effected a termination or if 60-days' notice was necessary as provided in the Act. Defendant's letter of June 15, 1948, agreeing to a meeting with the union's representatives to discuss modification of the agreement, defendants' written notice on September 9th purporting to terminate the agreement, defendants' letter to their employees on September 10th stating that they had terminated the agreement, and their letter on October 9th canceling the benefits under the agreement, definitely indicate that they considered the agreement as continuing after the one-year period and in force and effect up to the expiration of their 30-day notice, on October 9, 1948. In any event, it is clear that the contract was not modified or amended, and that it continued in force and effect at least until the expiration of the defendants' 30-day written notice, on October 9, 1948.

The court concludes that the plaintiff union's letter of June 14, 1948, in which it merely stated that it wished to meet with the defendants for the purpose of negotiating a new contract did not modify or amend the agreement, nor did it forestall its automatic continuation after the expiration date on July 16, 1948. See Oil Workers International Union v. Texoma Natural Gas Co., 5 Cir., 146 F.2d 62; Mountain States Division No. 17, Workers of America, v. Mountain States Telephone & Telegraph Co., D.C., 81 F.Supp. 397.

■ It is elementary that in considering a motion to dismiss the court must assume the truth of all material and well-pleaded allegations of fact. The amended complaint alleged numerous acts of violation of the collective-bargaining agreement by defendants prior to October 9, 1948, and, assuming the truth of those allegations, the court concludes that the amended complaint states a claim upon which relief could be granted.

Defendants' contention that the matters alleged in the amended complaint have been previously adjudicated by the circuit court for Kalamazoo county is without merit, as that court in its opinion, a copy of which was attached to the motion to dismiss the original complaint in this case, stated: "It must be borne in mind that this court is not concerned with, or even familiar with the respective merits of the controversy relating to the contract in question."

■ Defendants' contention in their motion to dismiss, that the court is without jurisdiction for the reason that the plaintiffs failed to comply with Section 9(h) of the Labor Management Relations Act, 29 U.S.C.A. § 159(h), relative to the filing of an anti-communist affidavit, is without merit for the reason that Section 9(h) of the Act requires such an affidavit only as a condition precedent to proceedings before the National Labor Relations Board. Other contentions by defendants in support of their motion to dismiss are without merit and do not require discussion or determination.

In summary, the court concludes:

(1) That it has jurisdiction of the matters alleged in plaintiffs' amended complaint; and.

(2) That, assuming the truth of all material and well-pleaded allegations of fact, the amended complaint states a claim upon which relief could be granted.

Defendants' motion to dismiss the amended complaint is accordingly denied. The defendants will be allowed 30 days from this date within which to file their answer.