INTERNATIONAL UNION OF OPERATING ENGINEERS, Local No. 181, v. DAHLEM CONST. CO.

No. 11297.

United States Court of Appeals Sixth Circuit.

Dec. 31, 1951.

Lawrence S. Grauman, Herman Cohen, Louisville, Ky., for appellant.

John P. Sandidge, Louisville, Ky. (Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, Ky., on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This action for damages was instituted under § 185, 29 U.S.C., 29 U.S.C.A. § 185, for violation of a contract between an employer and a labor organization representing the employees in an industry affecting commerce. The court directed a verdict for the plaintiff (appellee here), but ordered the jury to award such damages as were the direct and proximate result of the strike. The jury found the amount to be $1850, for which judgment was entered and this appeal was then prosecuted.

The controlling question is whether under the applicable statutes appellant is liable for the damages proved. The case arises out of the following facts:

On July 15, 1948, the General Contractors Association, Inc., which represented certain general contractors in and around Louisville, Kentucky, including appellee, and the Louisville Building & Construction Trades Council, which was the bargaining agent for seven affiliated unions, entered into a written contract to which appellant was made a party by mutual consent. The contract covered wages and other conditions of employment, and included arbitration of disputes and a no-strike clause. It also contained a provision to the effect that if either party gave written notice of a desire to modify any of the terms of the contract, negotiations should be entered into by the parties and in such case the agreement should remain in full force and effect until modified by a new agreement.

On March 4, 1949, the Building & Construction Trades Council gave written notice to the Contractors Association of its desire to modify articles 1, 2, 3, and 4 of the contract. On March 10, 1949, the Contractors Association gave the Building Trades Council written notice of its desire to modify article 2 of the contract pertaining to wages. Negotiations were entered into between the representatives of the Building Trades Council and the Contractors Association, and continued thereafter until September 3, 1949. July 28, 1949, the Contractors Association refused to agree to a wage increase; but the five unions working on appellee's building projects continued operations. July 29, 1949, the Contractors Association opened separate negotiations with appellant. During the period in controversy appellee had in its employ no member of appellant's union. August 11, 1949, the Contractors Association sent appellant a draft of a new contract which was refused, and on August 15 the appellant went out on strike. It placed pickets successively on five of appellee's construction jobs, causing them to remain at a standstill. As a result appellee was required to pay overtime, which would not otherwise have been necessary; to pay demurrage on railroad cars, perform unnecessary hauling, and to carry overhead without production. Appellant does not contend that the amount of damages allowed by the jury is excessive.

May 5, 1949, appellant sent to the Federal Mediation and Conciliation Service notice of the existence of the dispute, and later, on June 6, 1949, the Building Trades Council sent a similar notice to the Federal Mediation and Conciliation Service.

The action is based upon the contention that appellant breached its contract by going on strike August 15, 1949, without notice to appellee or to the General Contractors Association.

The applicable sections of the contract provide:

Article 3, section 3. "Neither the Association, Association members, Councils or Unions signatory hereto shall engage in, permit, induce, or encourage any stoppage of work, slowdown, strike, lockout or concerted refusal to work by reason of any dispute or difference of opinion or policy between the parties hereto, save and except

the failure of the other party to abide by a decision of the Joint Arbitration Committee, or a judgment of a Court of Law."

Article 4, section 2. "This agreement shall be in full force and effect until the first day of July, 1949. Should either party hereto give written notice during the month of March, 1949, of a desire to modify any of the terms and provisions of this contract, negotiations will be entered into by the parties hereto for the renegotiation of this agreement. Should such notice of a desire to modify the terms of this agreement be given by either party to the other, then this agreement shall remain in full force and effect until modified by a new agreement resulting from the negotiations."

Appellant contends that it had the right to strike at any time after July 1, 1949, since it had properly given the 60-day cooling-off period notice provided for in § 158 (d), 29 U.S.C., 29 U.S.C.A. § 158(d), quoted in the margin.[1] This statute does not absolve appellant of liability for its breach of the no-strike provision of its contract with appellee, for the reason (1) that appellant did not give notice in accordance with the express terms of § 158(d); and (2) that this statute does not apply to actions for damages instituted under § 185(a), 29 U. S.C., 29 U.S.C.A. § 185(a).

On the first point, the Building Trades Council gave its notice to modify the contract on March 4, 1949. This was sixty days prior to the expiration date of the contract. On May 5, 1949, more than sixty days after the notice to modify was given to the Contractors Association, appellant notified the Mediation and Conciliation Service of the existence of the dispute. A similar notice was given by the Building Trades Council to the Mediation and Conciliation Service more than ninety days after the notice of modification was given. But § 158(d), 29 U.S.C., 29 U.S.C.A. § 158(d), requires that the notice be sent within thirty days after the notice of modification. This provision is mandatory. The purpose of enacting the statute was that industrial strife might be prevented by prompt action of the Mediation and Conciliation Service. If the Service is delayed in communicating with the parties and in offering mediation and conciliation, its efforts often will be frustrated. Since appellant and its representative, the Building Trades Council, did not comply with this mandatory provision, its defense upon this point is not sustained.

Moreover, § 158, 29 U.S.C., 29 U.S.C.A. § 158, does not apply to an action for damages under § 185, 29 U.S.C., 29 U.

1. "For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and .

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later * * *."

S.C.A. § 185. The two statutes are included in totally separate divisions of the National Labor Relations Act, § 158 being found in Subchapter II—National Labor Relations— and § 185 being included in Subchapter IV —Liabilities of and Restrictions on Labor and Management. Section 158 in its original form was entitled "Unfair labor practices by employer defined" and included five paragraphs defining unfair labor practices which are written in the present statute. New definitions of unfair labor practices were included in the amended act and approximately two-thirds of § 158 is devoted to such definitions. The paragraphs relied on by the appellant, (d) 1, 2, 3, and 4, were also added to § 158, and the heading of the section is "Unfair labor practices." No provisions in § 158 relate in any way to § 185, the heading of which is "Suits by and against labor organizations—Venue, amount, and citizenship." The wording of the statutes strongly supports the conclusion that even if the appellant had complied with § 158(d), it would receive no immunity from a suit for damages for breach of contract under § 185.

This conclusion is supported by the legislative history of the amendment to the Labor Management Relations Act made in 1947. The Senate amendments to the Act at one point contained a provision which defined the violation of the terms of the collective bargaining contract as an unfair labor practice. This provision was omitted by the Senate and House in conference, for the reason that "Once parties have made a collective bargaining contract the enforcement of the contract should be left to the usual processes of the law and not to the National Labor Relations Board." House Conference Report No. 510, on H. R. 3020, 80th Cong., 1st Sess., 1947, pages 41 and 42. The striking out of the provision which defined violation of the contract as an unfair labor practice is strong evidence that Congress considered breaches of labor contracts to be separate and distinct from unfair labor practices, and intended that they should be separately handled by separate tribunals.

It follows that if appellant had complied with § 158(d), 29 U.S.C., 29 U.S.C.A. § 158

(d), that fact in no way rendered it immune from the damages resulting from the strike in violation of the contract. The controlling question therefore is whether the contract was in effect upon August 15, 1949, when appellant struck. Appellant contends that the contract was terminable at will by unilateral action within a reasonable time after July 1, 1949, was terminated by it, and was not in effect when the strike was called. In support of this conclusion it cites Boeing Airplane Co. v. National Labor Relations Board, 85 U.S.App.D.C., 116, 174 F.2d 988, 991, which holds that a contract of undetermined duration may become terminable by unilateral action on the part of either party after a reasonable time has elapsed. Appellant derives no assistance from this decision, for what the court actually held was that the contract could be terminated after proper notice; that the strike did not amount to termination; and it held the union liable for a material breach of the no-strike clause of the contract. This holding squarely supports the judgment of the District Court here.

What the unilateral act of termination is, which it claims caused the contract to expire, appellant does not clearly explain. The notices given by appellant to appellee were notices not of termination, but of a desire to modify the contract, and recognized that the contract was in full force. The secretary of the Building Trades Council stated in direct examination that the unions wanted an entirely new agreement; but on cross-examination he admitted that changes of all of the sections of each article of the contract were not desired, and refused to say how many sections the unions wished to have changed. The written notices addressed to the Mediation and Conciliation Service by the appellant and the Building Trades Council stated that a dispute existed between the parties, and made no mention of any desire to terminate the contract. But now it is contended that a notice of proposed modification is equivalent to a notice of termination; that section 2, article 4, of the contract, providing that the agreement should remain in full force and effect during negotiations for modification did not come into play, and

that the union therefore was not bound by the no-strike clause.

Such a construction would distort the express terms of the statute and run counter to several decisions construing it. A notice to terminate must be clear and explicit. Texoma Natural Gas Co. v. Oil Workers International Union, etc., D.C., 58 F.Supp. 132; affirmed 5 Cir., 146 F.2d 62, certiorari denied, 324 U.S. 872, 65 S. Ct. 1017, 89 L.Ed. 1426. A notice of modification is not a notice of termination and does not affect termination of the contract. United Steel Workers of America v. Shakespeare Co., D.C., 84 F.Supp. 267; Mountain States Division No. 17, Communications Workers v. Mountain States Telephone & Telegraph Co., D.C., 81 F.Supp. 397. The strike did not constitute a termination of the contract. Boeing Airplane Co. v. Aeronautical Industrial Dist. Lodge No. 751, D.C., 91 F.Supp. 596; affirmed Boeing Airplane Co. v. N.L.R.B., 85 U.S.App.D.C. 116, 174 F.2d 988.

Appellant relies on various Kentucky cases which hold that a contract for an indefinite time is terminable at will. This no doubt is the correct rule of law upon the general proposition. Boeing Airplane Co. v. Aeronautical Industrial Dist. Lodge No. 751, supra. Assuming, but not deciding, that the contract herein involved, after July 1, 1949, became a contract of indeterminate duration, appellant's contentions still are without merit. Kentucky law does not control, for Congress has occupied the field and has closed it to state regulation. International Union of United Automobile etc. Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978. In any case the Kentucky decisions give little comfort to the appellant, for they hold that a contract indefinite in duration and lacking mutuality is enforceable if executed. Victoria Limestone Co. v. Hinton, 156 Ky. 674, 676, 161 S.W. 1109; Johnson v. International Shoe Co., 228 Ky. 450, 452, 15 S.W.2d 270. In the instant case the contract was performed by all parties except appellant, including the carpenters, hod carriers, cement workers, truck drivers and laborers who endeavored to work for the appellee until prevented by appellant's picket lines. Since the contract was not terminated, under section 2 of article 4 the no-strike clause remained in effect, was violated by appellant, and it became liable for resulting damages.

The judgment is affirmed.