[No. D021289. Fourth Dist., Div. One. Aug. 14, 1996.]

CITY OF EL CAJON, Plaintiff and Respondent, v.
EL CAJON POLICE OFFICERS' ASSOCIATION et al., Defendants and
Appellants.

EL CAJON POLICE OFFICERS' ASSOCIATION et al., Plaintiffs and
Appellants, v.
CITY OF EL CAJON, Defendant and Respondent.

COUNSEL

Bobbitt & Gattey, Everitt L. Bobbitt, Vicki L. Gilbreath, Georgiou, Tosdal, Levine & Smith, Fern Steiner and Byron S. Georgiou for Plaintiffs and Appellants and for Defendants and Appellants.

McDougal, Love, Eckis & Grindle and Lynn R. McDougal for Plaintiff and Respondent and for Defendant and Respondent.

OPINION

WORK, Acting P. J.—The El Cajon Police Officers' Association (ECPOA) and the El Cajon Municipal Employees' Association (ECMEA) appeal a declaratory judgment for the City of El Cajon (City) declaring that the duration clauses within the negotiated labor memoranda of understanding (MOU) rendered the MOU's of "indeterminate duration," subject to termination upon reasonable notice, and such notice for each MOU had been given and received.[1] ECPOA and ECMEA contend the duration clause within each of their MOU's was the result of negotiations pursuant to the Meyers-Milias-Brown Act (MMBA, Gov. Code, § 3500 et seq.) and are enforceable; the MOU's are not contracts of indeterminate duration and may not be terminated upon reasonable notice; and City never proposed a change to the duration clauses and thus cannot proceed to implement its last, best and final offer which in effect modifies the duration clauses. As we shall explain, we conclude the meet and conferral process as provided in the duration clauses, if unsuccessful, renders the MOU's to be contracts of indeterminate duration terminable upon reasonable notice; the unions' notices to meet and confer did not constitute notices of termination; however, when the parties bargained to impasse, City's letters in November 1993 to the unions presenting its last, best and final offers constituted reasonable notices of termination. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Under the MOU between the ECPOA and City, effective as of July 1, 1991, the duration clause within article 23 provides: "This MOU shall become effective only after the ratification by members of the ECPOA and the adoption by the City Council of the CITY and continue in effect through June 30, 1992. "Should either party to this MOU desire to meet and confer

---

[1] In granting City's request for declaratory relief, the trial court denied the employee organizations' petition for writ of mandate and declaratory relief.

on a successor MOU, that party shall serve upon the other a written request for such meet and confer, on or about March 1, 1992, and the meet and confer process should commence on or about April 15, 1992. Should the parties hereto fail to reach agreement on the successor MOU, the terms of this MOU shall remain in effect until a successor MOU is agreed upon and implemented." By letter dated March 11, 1992, ECPOA requested City to meet and confer with it on a successor MOU for the 1992-1993 fiscal year. Although the parties met on several occasions and proposals were exchanged, they were unable to agree upon the terms of a successor MOU. Consequently, during the 1992-1993 fiscal year, ECPOA and City operated under the terms of the prior year's MOU. By letter dated May 6, 1993, ECPOA requested City meet and confer with it on a successor MOU for the 1993-1994 fiscal year. The precise language used within these meet and confer letters was that the ECPOA gave notice it intended to "negotiate a successor agreement."

During the course of the parties' negotiations, ECPOA asserted City could not unilaterally impose a salary reduction, given the MOU contained article 23. Although City disagreed with this construction of article 23, maintaining it had the right to unilaterally reduce salaries, it nevertheless expressed a desire to resolve the stalemate through negotiation. However, such negotiations were unsuccessful. In October 1993, the parties unsuccessfully attempted resolution through mediation. On November 17, City sent ECPOA its last and final offer which included a 2.5 percent pay reduction.

Under the ECMEA MOU effective on July 1, 1992, article 22 provides: "This MOU shall become effective only after adoption by the City Council, the City of El Cajon and ratification by the members of ECMEA. This MOU shall commence its term July 1, 1992 (except as otherwise provided in this MOU) and shall continue in effect through June 30, 1993. Should the parties hereto fail to reach agreement on a successor MOU to this one, its terms shall remain in effect until a successor MOU is agreed upon and implemented." Regarding renegotiations, article 23 of the ECMEA MOU provides:

"Should either party to this MOU desire to 'Meet and Confer' on a successor MOU to this MOU, that party shall serve upon the other a written notice for such 'Meet and Confer'. Within 45 days from the date of such notice, the parties will commence the 'Meet and Confer' process.

"For purposes of the 1993-1994 fiscal year period, the said written notice should be served on or about March 1, 1993 and the 'Meet and Confer' process should commence on or about April 15, 1993. The parties will

exchange mutual proposals for a successor MOU to this MOU at the first 'Meet and Confer' session."

By letter dated March 26, 1993, ECMEA requested City meet and confer with it on a successor MOU for the 1993-1994 fiscal year. The parties were unable to agree on a successor MOU through negotiations or impasse hearings. On November 2, 1993, City gave ECMEA its last and final proposal, which included a 2.5 percent salary reduction.

On December 1, 1993, City filed a complaint for declaratory relief against the employer organization. On the same day, ECPOA, ECMEA and the El Cajon Firefighters' Association[2] petitioned for a writ of mandate and declaratory relief. On April 18, the parties stipulated the cases would be consolidated. In granting City's request for declaratory relief and denying the employee association's petition for writ of mandate and declaratory relief, the trial court declared the MOU's constituted contracts of indeterminate duration subject to termination upon reasonable notice and further that reasonable notice of termination for each MOU had been given and received. The trial court then permitted City to enact its last, best and final offer to ECPOA and ECMEA. The court denied City's request to declare the duration clauses void as unconstitutional. Judgment was entered on May 20, 1994. On June 10, ECPOA and ECMEA timely filed their notice of appeal.

*The MOU's Are Contracts of Indeterminate Duration*
*Terminable Upon Reasonable Notice*

ECPOA and ECMEA contend the trial court's interpretation of the MOU's as contracts of indeterminate duration terminable upon reasonable notice is incorrect, inconsistent with the express language of the duration clauses in the MOU's and the collective bargaining process pursuant to the MMBA. Guided by the underlying purposes of the MMBA, the express language of the MOU's and federal case precedent, we conclude the trial court correctly determined the MOU's became contracts of indeterminate duration, subject to termination upon reasonable notice by either party, upon the parties' failure to agree on a successor MOU after implementation of the meet and conferral process.

Preliminarily, we apply de novo review, exercising our independent judgment as to the meaning of the duration clauses within the MOU's. (*New*

---

[2] The El Cajon Firefighters' Association (ECFFA) did not appeal the superior court decision and is not a party to this appeal. On November 19, 1993, City sent ECFFA its last and final offer.

*Haven Unified School Dist.* v. *Taco Bell Corp.* (1994) 24 Cal.App.4th 1473, 1483 [30 Cal.Rptr.2d 469]; see *Safeco Surplus Lines Co.* v. *Employer's Reinsurance Corp.* (1992) 11 Cal.App.4th 1403, 1406 [15 Cal.Rptr.2d 58].) It is a judicial function to interpret a contract or written document unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Here, where the evidence is undisputed and the parties draw conflicting inferences, we will independently draw inferences and interpret the MOU's. (*Id.* at p. 866, fn. 2.) We are guided by the well-settled rules of interpretation of a contract, endeavoring to effectuate the mutual intent of the parties as it existed at the time of contracting insofar as it is ascertainable and lawful. (Civ. Code, § 1636; *Ticor Title Ins. Co.* v. *Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730 [223 Cal.Rptr. 175].)

■ "As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit. [Citations.] A court must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach' [citation].' If possible, the court should give effect to every provision. [Citations.] An interpretation which renders part of the instrument to be surplusage should be avoided. [Citations.]

"When an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity. [Citations.]" (177 Cal.App.3d at p. 730.)

■ Mindful "[a]pplicable law becomes part of the contract as fully as if incorporated by reference" (*Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758, 764 [143 Cal.Rptr. 115]; *Grubb* v. *Ranger Ins. Co.* (1978) 77 Cal.App.3d 526, 529 [143 Cal.Rptr. 558]), we interpret the disputed duration clauses within the context of the MMBA, which was adopted to regulate labor relations for local government employees by providing a reasonable method of resolving disputes concerning the terms and conditions of employment. (Gov. Code, § 3500; *Santa Clara County Counsel Attys. Assn.* v. *Woodside* (1994) 7 Cal.4th 525, 536 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) "Its principal means for doing so is by imposing on public agencies the obligation to 'meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of recognized employee organizations. . . .' [Citation.] The duty to meet and confer in good faith has been

construed as a duty to bargain with the objective of reaching binding agreements between agencies and employee organizations over the relevant terms and conditions of employment. [Citation.] The duty to bargain requires the public agency to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse; this duty continues in effect after the expiration of any employer-employee agreement. [Citation.]" (*Santa Clara County Counsel Attys. Assn.* v. *Woodside, supra,* 7 Cal.4th at pp. 536-537.)

 The duration clauses within both MOU's are quite clear and express in their language. The respective MOU's become effective only upon ratification by their respective unions and adoption by the city council and have an express term of one fiscal year. Consistent with the MMBA, should either party wish to meet and confer on a successor MOU, that party must serve upon the other a timely notice to meet and confer in accordance with the respective provisions of each duration clause and then the meet and conferral process begins. Both duration clauses provide that should the parties fail to reach an agreement on a successor MOU, the terms of the existing MOU shall remain in effect until a successor MOU is agreed upon and implemented. At oral argument, the parties agreed that should neither party wish to meet and confer on a successor MOU, the terms and conditions of the existing MOU continue in effect for the next fiscal year, even though the duration clause expressly provides the MOU shall continue in effect only through the governing fiscal year. Consequently, the provisions are consistent with the MMBA, requiring the parties, if there is a desire to alter the terms and conditions of the employment relationship, to meet and confer and, if the parties are unable to reach agreement, to continue the status quo during further negotiations. However, the effect of an unproductive meet and conferral process is to transmute express one-year term MOU's into contracts of indeterminate duration.

"Labor contracts of indeterminate duration or ones that do not provide a manner of termination are terminable at will." (*Montgomery Mailers' Union 127* v. *Advertiser Co.* (11th Cir. 1987) 827 F.2d 709, 715.)[3] The contractual interpretation furthered by the ECPOA and the ECMEA that the existing MOU's continue beyond their expiration dates indefinitely until successor

---

[3]Given that the MMBA parallels the National Labor Relations Act (29 U.S.C. § 151 et seq. (NLRA)), California courts may look to federal case law based upon parallel provisions in interpreting the MMBA and for guidance in California employment law contracts. (See *Department of Personnel Administration* v. *Superior Court* (1992) 5 Cal.App.4th 155, 188 [6 Cal.Rptr.2d 714]; *Public Employees Assn.* v. *Board of Supervisors* (1985) 167 Cal.App.3d 797, 806-807 [213 Cal.Rptr. 491]; *San Joaquin County Employees Assn.* v. *City of Stockton* (1984) 161 Cal.App.3d 813, 819 [207 Cal.Rptr. 876].)

MOU's are successfully negotiated and implemented connotes agreements which would remain in effect until both parties consented to modification or termination. However, such agreements "which can only be terminated through the mutual consent of the parties are generally considered to be of indeterminate duration." (*Communications Workers* v. *Southwestern Bell Tel.* (5th Cir. 1983) 713 F.2d 1118, 1123, fn. 4.) Indeed, " '[i]t is inconceivable that either party, wishing to avoid a breakdown of labor-management relations would have intended that the contract continue in force unless efforts to change the contract were successful, or unless both sides wanted to terminate the contract. The side *not* desiring a change could refuse to agree, within the confines of the Labor-Management Relations Act's proscription against refusals to bargain. Each side could stand entrenched knowing the contract would continue as it was. The side desiring to alter the terms or conditions of the relationship would never have a prayer of success.' " (*Ibid.*, quoting *Kaufman, etc.* v. *Intern. Broth. of Firemen* (5th Cir. 1979) 607 F.2d 1104, 1110; see also *Montgomery Mailers' Union 127* v. *Advertiser Co.*, *supra*, 827 F.2d at p. 715.) Consequently, the interpretation proffered by the unions requiring termination only by mutual consent of the parties renders the MOU's contracts of indeterminate duration. "Labor contracts of indeterminate duration are generally terminable at will upon reasonable notice to the other party." (*Communications Workers* v. *Southwestern Bell Tel.*, *supra*, 713 F.2d at p. 1123, fn. 4.)

ECPOA and ECMEA attempt to distinguish the holding in *Communications Workers* v. *Southwestern Bell Tel.*, *supra*, 713 F.2d 1118, on the basis of dissimilar language in the respective duration clauses is unavailing. There, the pertinent portion of the duration clause provided the terms of the parties' agreement " '. . . [a]re, and shall remain, in force and effect, and shall be enforceable by either party; and shall not be abridged, modified, or terminated unless and until the parties agree otherwise in the course of collective bargaining." (*Id.* at p. 1120.) Here, while the words of the MOU's are not identical, their import is the same, as they provide their terms "shall remain in effect until a successor MOU is agreed upon and implemented." Consequently, both clauses provide for labor terms to remain in effect until the parties agree otherwise. Within the interpretive context of these duration clauses, there is no appreciable difference in language.

*Reasonable Notice of Termination Occurred Not Through the Unions' Requests to Meet and Confer, but Through City's Letters Presenting Its Last, Best and Final Offers After the Parties Bargained to Impasse*

■ Having determined the MOU's evolved into labor contracts of indeterminate duration terminable at will upon reasonable notice to the other

parties, we must now decide whether the trial court's finding such reasonable notice of termination of each MOU had been given and received is amply supported by the record and theoretically correct as a matter of law. As to the latter, the parties infer the trial court found reasonable notice of termination was given through the unions' requests to meet and confer on successor MOU's. The ECPOA and ECMEA challenge this finding, arguing their requests to meet and confer evinced simply a desire to see "what would come out of negotiations," not a notice of intent to terminate the existing MOU's. Relying on case precedent where notice to modify was construed to have the same effect as a notice to terminate (see, e.g., *Kaufman, etc.* v. *Intern. Broth. of Firemen, supra,* 607 F.2d at p. 1109; *East Bay U. of Mach., Local 1304* v. *Fibreboard Paper Prod. Corp.* (N.D.Cal. 1968) 285 F.Supp. 282, 287-289), City urges us to affirm the parties' inferred finding the unions' requests to meet and confer constituted sufficient notice of intent to replace the existing MOU's by negotiating successor ones so as to provide the necessary reasonable notice of termination. Although we conclude the unions' requests to meet and confer did not constitute notice of intent to terminate the MOU's, City's November 1993 letters presenting its last, best and final offer after the parties bargained to impasse constituted adequate, reasonable notices of termination.

■ Notices to terminate must be clear and explicit, as a notice of modification does not constitute a notice of termination resulting in the cessation of the contract. (*International Union of Op. Eng.* v. *Dahlem Const. Co.* (6th Cir. 1951) 193 F.2d 470, 475.) However, a notice to modify may have the same effect as a notice to terminate where the duration clause within the contract is silent regarding the effect either type of notice would have and essentially treats the notices as functionally equivalent preventing automatic extension. (See, e.g., *Kaufman, etc.* v. *Intern. Broth. of Firemen, supra,* 607 F.2d at p. 1109.)[4] ■ This is not the case here.

Although the parties each proffer several cases to support their respective positions, neither party has found a case precisely in point, involving the same or similar language in the duration clauses of the MOU's. However,

---

[4]The duration clause in *Kaufman* provided: "This agreement shall become effective as of November 13, 1967, and shall remain in effect until November 12, 1970, and from year to year thereafter with the provision that should either party desire to terminate this Agreement or to modify any part thereof, it shall notify the other party in writing no less than sixty (60) nor more than seventy-five (75) days prior to the end of said three-year period or the end of any subsequent one-year period that the party giving such notice desires either to terminate the Agreement at the end of such period or to negotiate amendments or changes of the terms or provisions thereof." (*Kaufman, etc.* v. *Intern. Broth. of Firemen, supra,* 607 F.2d at p. 1106.)

*International Union of Op. Eng.* v. *Dahlem Const. Co., supra,* 193 F.2d 470, is instructive. There, a union went on strike following unsuccessful negotiations pursuant to a notice to modify. The duration clause provided: " 'This agreement shall be in full force and effect until the first day of July, 1949. Should either party hereto give written notice during the month of March, 1949, of a desire to modify any of the terms and provisions of this contract, negotiations will be entered into by the parties hereto for the renegotiation of this agreement. Should such notice of a desire to modify the terms of this agreement be given by either party to the other, then this agreement shall remain in full force and effect until modified by a new agreement resulting from the negotiations.' " (*Id.* at p. 473.) The Sixth Circuit held that under the circumstances the notice to modify did not constitute a notice of termination. (*Id.* at p. 475.) The Fifth Circuit in *Kaufman, etc.* v. *Internat. Broth. of Firemen, supra,* 607 F.2d at page 1111, agreed with the *Dahlem* court because the agreement "explicitly stated that the contract was to remain in effect until a new one was reached." (*Ibid.*) In distinguishing the duration clause before it, the Fifth Circuit emphasized it contained no statement regarding the effect of a notice to modify. The Fifth Circuit then held: "If an agreement only provides for notice to terminate, it cannot reasonably be assumed that a notice to modify should have the same effect. [Citation.] Similarly, where the contract states the precise effect of a notice to modify, courts should enforce the provision as written." (*Ibid.*) Here, the MOU's provide only for a request to meet and confer and state the precise effect of such a request if the parties fail to agree on a successor MOU.[5] ECPOA and ECMEA requested to meet and confer for a successor agreement, employing the precise language of the MOU which provided that if the successor agreement is not agreed upon, then the existing MOU continues in force and effect. By using the precise language required by the duration clauses in the MOU's, their requests to meet and confer cannot be reasonably interpreted to be equivalent to requests to terminate. Guided by *Dahlem,* the duration clauses here, which are expressly silent regarding termination, do not permit the required requests to meet and confer to be interpreted as notices of termination.[6]

City's reliance on *East Bay U. of Mach., Local 1304* v. *Fibreboard Paper Prod. Corp., supra,* 285 F.Supp. 282, is misplaced. There, the district court

---

[5]We reiterate the parties agree that absent a request to meet and confer the MOU continues in effect for the next fiscal year.

[6]The unions urge us to attach significance to the fact that when ECPOA and City were unable to reach agreement on a successor MOU for the 1992-1993 fiscal year, they continued to operate under the terms of the existing contract and City neither tried to unilaterally implement changes nor assert the MOU was terminated based upon ECPOA's notice to meet and confer. Granted, the practical construction placed upon the contract by the people who have agreed to be bound by its terms is generally held to be relevant in determining the meaning of those terms if in doubt. (*Cincinnati Newspaper Guild* v. *Cincinnati Enquirer* (6th Cir. 1988) 863 F.2d 439, 443; see also, *Kaufman, etc.* v. *Intern. Broth. of Firemen, supra,* 607

ruled as a matter of law a collective bargaining agreement had expired 60 days after the union served notice to modify. The duration clause provided:

"This Agreement shall continue in full force and effect to and including July 31, 1959, and shall be considered renewed from year to year thereafter between the respective parties unless either party hereto shall give written notice to the other of its desire to change, modify, or cancel the same at least sixty (60) days prior to expiration.

"Within fifteen (15) days after notice of reopening is given, the opening party shall submit a complete and full list of all proposed modifications. All other sections shall remain in full force and effect. Negotiations shall commence no later than forty-five (45) days prior to the anniversary date of the Agreement unless otherwise mutually changed." (285 F.Supp. at p. 284.) The court held "[o]nce one of the parties has stated his desire to modify the *old* contract, that contract cannot obviously be 'renewed', since there would in effect be a *different* or *new contract.*" (*Id.* at p. 287.) The court further rejected the union's argument the second paragraph required continuation of the old agreement, concluding the placement of the "full force and effect" sentence between "the sentence which governs the time for presenting a list of modifications and the sentence which governs the commencement of negotiations, [as intending] to limit the *scope* of the proposed modifications prior to negotiations." (*Ibid.*) The court concluded: "[T]he only interpretation that can be given to the agreement is that the 'full force and effect' clause was inserted only to insure that after a list of modifications was presented, future negotiations would not be burdened with additional proposals. Hence, once a notice of modification is sent, as was the case here, the contract cannot be *renewed*, and if the parties cannot reach agreement on a new contract prior to the expiration date of the old contract, there is no contract in existence after July 31, 1959. It logically follows that defendant could not have breached the contract when it contracted out work since there was no contract in existence to breach." (*Id.* at p 289.)

Here, although the duration clauses do not expressly include such automatic "renewal" language permitting continuation of the agreement from

F.2d at p. 1112.) However, the parties are bound by the MMBA, as City was not permitted to unilaterally implement changes until impasse was reached. (*Santa Clara County Council Attys. Assn.* v. *Woodside, supra,* 7 Cal.4th at p. 537.) The parties do not dispute an impasse was reached in November 1993. Up to that time, City maintained its right to unilaterally implement changes upon impasse despite the duration clause, but could not do so until impasse. (*Ibid.*) Consequently, no inference can be drawn by City's conduct in the meet and conferral process supporting the unions' position the expired MOU's would continue indefinitely until successor MOU's were agreed upon.

year to year unless written notice of a desire to modify or cancel the agreement is forwarded to the other party, the parties agree that absent a request to meet and confer the terms and conditions of the MOU's continue in effect for the next fiscal year. However, where a request to meet and confer is made, the clauses state the existing MOU, *in its entirety*, continues in full force and effect if the meet and conferral process is pursued and the parties fail to reach agreement on a successor MOU. In contrast to the limiting language used in the *Fibreboard* duration clause that only the remaining unaffected provisions continue in effect, the language used in the clauses here does not permit the inference the requests to meet and confer were anything more than that which the clauses expressly call for. As already explained, to imply further the requests constituted notices of termination would be inconsistent with the express language and intent of the clauses here providing for continuation of the entire MOU if the meet and conferral process is pursued and the parties fail to agree on a successor MOU. The *Fibreboard* language is more akin to the language in *Kaufman* providing expressly for both notices to modify and terminate, but silent as to the effect of either type of notice. Here, the language clearly states the precise effect of a notice to meet and confer. Consequently, *Fibreboard* is inapposite.[7]

Although we conclude the unions' requests to meet and confer did not constitute notices of termination under the duration clauses in the MOU's as a matter of law, we nevertheless conclude substantial evidence supports the trial court's finding reasonable notice of termination was provided by City when the parties bargained to impasse in November 1993, and City forwarded to each union its last, best and final offer concerning employment.[8] Given the duration and the unsuccessful nature of the parties' negotiations

[7]We note in passing, without agreeing, a contrary interpretation was made of the *Fibreboard* duration clause by a California Court of Appeal in *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 725 [39 Cal.Rptr. 64]. The Court of Appeal held: "In our opinion, the reasonable interpretation to be placed upon the entire clause is as follows: that unless either party gives a written notice to the other of its desire to cancel the contract at least 60 days prior to its expiration date, the contract is renewed for another year; that where a written notice of a desire to change or modify the contract is given 60 days prior to such expiration date, the provisions of the contract concerning which no change or modification is requested are to remain in effect while the parties negotiate the proposed modifications. We accordingly conclude that the trial court erroneously determined that the subject contract terminated as a matter of law pursuant to its own terms and conditions. Whether the contract was in fact terminated or whether it was still in existence subject to modification were questions of fact for the jury requiring appropriate instructions." (*Id.* at p. 725.)

[8]ECPOA and ECMEA assert City never proposed a change to the duration clause and thus cannot proceed to implement its last, best and final offer which in effect modifies that clause. The premise upon which this contention rests is faulty, for the duration clause has not been

and mediation, City's letters to the respective unions presenting its last and final offers constituted under the circumstances reasonable notices of termination of the MOU's.[9] It is settled after negotiating to impasse under the MMBA City is entitled to impose its last, best offer. (*Department of Personnel Administration* v. *Superior Court* (1992) 5 Cal.App.4th 155, 188-189 [6 Cal.Rptr.2d 714].)[10]

## DISPOSITION

Judgment affirmed.

Huffman, J., and McDonald, J., concurred.

---

modified. Rather, this court and the trial court have interpreted that provision consistent with governing principles of labor contract law and the MMBA and conclude the MOU's are essentially contracts of indeterminate duration terminable upon reasonable notice as a matter of law. Consequently, because we simply interpret the existing duration clause, City has not unilaterally modified the provision. Rather, it has simply complied with its legal interpretation. Thus, the unions were not denied any opportunity to discuss potential modification of the duration clauses.

[9]City's letter to ECPOA, dated November 17, 1993, provided:

"Attached you will find the city's last and final offer to the El Cajon Police Officers' Association. You will note that we have amended the salary reduction to approximately 2.5%.

"The parties have already utilized the services of the State Mediation and Conciliation Service, to no avail. If you believe that there may still be a possibility of settlement and wish to meet and confer further, please contact the Director of Personnel no later than November 29, 1993. The City sincerely wishes to achieve agreement with your organization.

"If you do not, by November 29, indicate a desire to meet and confer, the City Council will be advised that an impasse has been reached and the City's bargaining team recommends that the City Council unilaterally impose the City's last and final offer to be implemented beginning with the first pay period ending in January, 1994."

ECPOA has not asserted, and the appellate record is silent regarding whether it ever responded to City's letter requesting to meet and confer further. Absent an expressed desire to meet and confer further, City's letter in paragraph three made it clear the city council would be advised of impasse and City's bargaining team would recommend unilateral imposition of its last and final offer. Under the circumstances, City's letter constituted reasonable notice of termination of the MOU.

Although ECMEA did not receive a letter from City like ECPOA and ECFFA, it was presented City's last and final proposal on November 2, 1993.

[10]In light of our disposition, we do not address City's contentions the powers of government may not be delegated to a private group and it is constitutionally prohibited from entering into duration clauses exceeding one-year in length.