1 Cal.Rptr.3d 447 (2003)
109 Cal.App.4th 1728
Antone BOGHOS, Plaintiff and Respondent,
v.
CERTAIN UNDERWRITERS AT LLOYD'S et al., Defendants and Appellants.
No. H024481.
Court of Appeal, Sixth District.
May 29, 2003.
Rehearing Denied June 27, 2003.
Review Granted September 24, 2003.
*448 Leboeuf, Lamb, Greene & MacRae, Dean Hansell, Sharon C. Corda, Los Angeles, for Appellants Lloyd's of London et al.
Bohn & Bohn, Robert H. Bohn, San Jose, Trial Lawyers for Public Justice, Michael J. Quirk, F. Paul Bland, Jr., for Respondent Antone Boghos.
RUSHING, P.J.
Certain Underwriters at Lloyd's, International Risk Management Group, and Petersen International Underwriters (collectively "Lloyd's") petitioned to compel arbitration of Antone Boghos's claims for denial of long-term disability benefits. The trial court denied the petition. On appeal, Lloyd's argues (1) the insurance policy unambiguously requires arbitration of Boghos's claims; and (2) the arbitration clause was not unconscionable. We will affirm.

FACTS AND PROCEDURAL BACKGROUND
Antone Boghos owned and operated a plumbing business. In 1998, he applied for a long-term disability insurance policy. Petersen International Underwriters handled the application. Certain Underwriters at Lloyd's underwrote the policy. On January 8, 1999, the policy took effect.
The certificate of insurance includes a "Service of Suit Clause." It provides, in pertinent part: "In the event of the failure of Underwriters to pay any amount claimed to be due under the insurance described herein, Underwriters have agreed that, at the request of Assured (or Reinsured) they will submit to the jurisdiction of a court of competent jurisdiction within the United States."[1]
The declaration of insurance contains an arbitration clause. It provides, in pertinent part: "BINDING ARBITRATION: Not withstanding any other item set forth herein, the parties hereby agree that any *449 dispute which arises shall be settled in Binding Arbitration."[2]
In May 2000, Boghos suffered injury to his neck and head. The injury resulted in constant headaches, vertigo, loss of concentration, diminished work strength and an inability to continue his plumbing business.
Boghos applied for long-term disability benefits. Lloyd's commenced payments to Boghos. However, in December 2000, Lloyd's notified Boghos that they were discontinuing payments to him.
In November 2001, Boghos filed suit against Lloyd's, arguing that Lloyd's wrongfully refused to pay disability benefits. Boghos's complaint included claims for bad faith denial of insurance, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.
In February 2002, Lloyd's moved to compel arbitration of Boghos's claims. The trial court denied the petition to compel arbitration. It found that Lloyd's consented, under the service of suit clause, to the court's jurisdiction to resolve failure to pay claims, and that any ambiguity in the policy resulting from conflicting provisions should be resolved in Boghos's favor. The trial court also found that the arbitration clause was unconscionable.
Lloyd's appeals.

STANDARD OF REVIEW
Whether an arbitration agreement applies to a controversy is a question of law. If no conflicting extrinsic evidence to aid interpretation was introduced, then the appellate court exercises its independent judgment. (Brookwood v. Bank of America (1996) 45 Cal.App.4th 1667, 1670, 53 Cal.Rptr.2d 515.) If the trial court resolved disputed facts to reach its decision, then we review that decision to see if it is supported by substantial evidence. (Engineers & Architects Assn. v. Community Development Dept. (1994) 30 Cal. App.4th 644, 653, 35 Cal.Rptr.2d 800.)

DISCUSSION
According to Lloyd's, the service of suit clause constitutes a consent to the court's jurisdiction only for the purpose of enforcing arbitration awards. Because Boghos's lawsuit against Lloyd's is not an action to enforce an arbitration award, Lloyd's claims the arbitration provision clearly applies, and therefore the trial court erred in refusing to compel arbitration. For five reasons, we disagree.
*450 First, the plain language of the service of suit clause contradicts Lloyd's argument. There is nothing in the clause limiting its applicability to the enforcement of arbitration awards. There is nothing in the clause even referring to arbitration. The only limitation upon the clause's applicability is the requirement that the insurer fail "to pay any amount claimed to be due under the insurance described herein...." To say that the phrase "failure ... to pay any amount claimed to be due under the insurance described herein" really means only actions to enforce arbitration awards turns the plain language of the clause upon its head.
Second, Lloyd's interpretation would either render the service of suit clause surplusage or make it unlawful. Specifically, if the service of suit clause is construed to only apply to actions to enforce arbitration awards, the clause would be surplusage. This is because the California Arbitration Act already gives parties an independent right to petition courts for enforcement of arbitration awards. (Code Civ. Proc, § 1285; see also 9 U.S.C. § 207.)[3] Since the parties already have by statute the right claimed by Lloyd's to be conferred by the service of suit clause, Lloyd's interpretation means the clause is unnecessary. An interpretation that renders part of a contract surplusage should be avoided. (City of El Cajon v. El Cajon Police Officers' Assn. (1996) 49 Cal. App.4th 64, 71, 56 Cal.Rptr.2d 723.)
Additionally, if the service of suit clause is construed to only apply to the confirmation of arbitration awards based upon claims for failure to pay, then the clause would implicitly prohibit confirmation actions of any other type of claim asserted. If interpreted in this manner, then the clause would be in contravention of the California statutory and federal law already noted, that creates a general right to petition a court for confirmation of any arbitration award. (City of El Cajon v. El Cajon Police Officers' Assn., supra, 49 Cal. App.4th at p. 71, 56 Cal.Rptr.2d 723.) Accordingly, this interpretation of the service of suit clause would violate the canon of construction requiring that "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, ..." (Civ.Code, § 1643.)
Third, despite Lloyd's claim to the contrary, Lloyd's interpretation is not the only construction that gives meaning to the arbitration provision. Lloyd's says we should adopt its view of the service of suit clause because otherwise the arbitration clause will never apply. We disagree. If the service of suit clause is interpreted according to its plain terms, then it allows the insured to utilize the courts for claims involving the insurer's "failure ... to pay any amount claimed to be due under the insurance...." Other claimsnot involving the insurer's failure to paywould still be subject to the arbitration clause. In fact, Lloyd's concedes that "it is possible for serious disputes to arise under first party policies involving issues not necessarily connected to an insurer's failure to pay a claim...." In addition, the service of suit clause would permit the insured to *451 choose, at its option, to arbitrate even failure to pay claims. Thus, even in the case of failure to pay claims, arbitration could still be an option, should the insured so desire. For these reasons, we reject Lloyd's view that only its construction of the service of suit clause gives effect to the arbitration provision.
Fourth, Lloyd's position conflicts with rules of interpretation that remaining ambiguities within contracts, particularly adhesive contracts, be resolved against the drafter. (Badie v. Bank of America (1998) 67 Cal.App.4th 779, 800, 79 Cal.Rptr.2d 273.) As Lloyd's concedes, this insurance policy, which Lloyd's drafted, is a contract of adhesion. Thus, under settled rules of contract interpretation, any remaining ambiguity that may exist between the service of suit and arbitration clauses should be construed against Lloyd's. "While it has been held that `doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration' [citation], that rule was announced in the context of a commercial contract devoid of allegations or evidence of adhesion. The agreement in this case may be more analogous to standardized insurance contracts in which it has long been established that `ambiguous clauses ... are to be interpreted against the insurer. ...' [Citation.]" (Victoria v. Superior Court (1985) 40 Cal.3d 734, 744, 222 Cal.Rptr. 1, 710 P.2d 833; see also Lawrence v. Walzer & Gabrielson (1989) 207 Cal.App.3d 1501, 1506-1507, 256 Cal.Rptr. 6.) Thus, any unresolved conflict between the service of suit clause, wherein Lloyd's agrees at the request of the insured to submit to the court's jurisdiction, and the arbitration clause, which provides that "Not withstanding any other item set forth herein, ..." any dispute shall be arbitrated, must be decided against Lloyd's, since Lloyd's drafted this contract of adhesion.
Lloyd's cites Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899, for the familiar rule that the Legislature has expressed a strong public policy in favor of arbitration, and therefore courts should "`"indulge every intendment to give effect to such proceedings."' [Citations.]" But that rule does not permit us to ignore standard rules of contract interpretation. Nor does it mandate that every arbitration clause be deemed to cover every type of dispute. As discussed above, there are many reasons why Lloyd's interpretation must be rejected and why the arbitration clause here must be construed to exclude the arbitration of the insured's failure to pay claims. In the circumstances of this case, the public policy in favor of arbitration does not outweigh those considerations.
Finally, we find distinguishable cases cited by Lloyd's. McDermoti Intern, v. Lloyds Underwriters of London (5th Cir. 1991) 944 F.2d 1199, the primary authority relied upon by Lloyd's, did not apply California rules of contract interpretation. McDermott expressly found that the insured could not benefit from the traditional rule that ambiguities within contracts, particularly adhesion contracts, are construed against the drafter. (See id. at p. 1207.)
We also are not persuaded by Continental Cas. Co. v. Certain Underwriters at Lloyd's (N.D.Cal., Jul. 21, 1993, No. C-92-4094-DLJ) 1993 WL 299232. There, the court interpreted a similar service of suit clause and arbitration provision. The court decided the purpose of the service of suit clause was to ensure payment of arbitration awards pursuant to the arbitration provision. The court concluded that this interpretation was "plausible because it gives the service of suit clause and arbitration provision effect, ..." (Id. at p. *4.) Besides the fact that there is a dearth of reasoning in Continental, we find it unpersuasive since it did not discuss the fact that the California Arbitration Act already gives parties an independent right to petition *452 courts for enforcement of arbitration awards. (Code Civ. Proc, § 1285; see also 9 U.S.C. § 207.) Further, under our interpretation, both the service of suit clause and arbitration provision are given effect: the arbitration clause applies to all claims other than those involving failure to pay, and an insured may also exercise the choice to arbitrate claims based upon the failure to pay.
In contrast to the cases cited by Lloyd's, we find more persuasive the reasoning of Transit Cas. Co. v. Certain Underwriters (Mo.App.1998) 963 S.W.2d 392, 399. In considering a nearly identical arbitration and service of suit clause, Transit rejected the insurer's claim that the service of suit clause only applied to enforcement of arbitration awards. In so doing, Transit stated "`[i]f Lloyd'sone of the largest and most experienced insurance underwriters in historywanted to make its own boilerplate service of suit clause only an "aid to arbitration," it could have employed simple English words to say so.' [Citation.] ... This is the reason for the rule that courts construe ambiguities in contracts against those who draft them. [Citation.] The Reinsurers are in no position to complain at this point about the fact that they failed to draft the language as they would now like for this court to interpret it." (Id. at p. 398.)
We find Transit more convincing than McDermott and the other authorities cited by Lloyd's. We therefore reject Lloyd's claim that the service of suit clause is unambiguous and applies only to enforce arbitration awards.
If the contract language is clear and not absurd, it will be followed. (Civ. Code, § 1638.) We construe the contract as a whole, giving effect to every part if reasonably practicable, with each clause assisting us in interpreting the other. (Civ.Code, § 1641.) If possible, we construe a contract so as to give effect to all its provisions or particulars. (Code Civ. Proc., § 1858.) We try to avoid interpretations that render part of the instrument surplusage. (City of El Cajon v. El Cajon Police Officers' Assn., supra, 49 Cal. App.4th at p. 71, 56 Cal.Rptr.2d 723.) When an instrument is susceptible to two interpretations, the court should select the construction making the instrument lawful, operative, definite, reasonable and capable of being carried into effect. (Badie v. Bank of America, supra, 67 Cal.App.4th at p. 800, 79 Cal.Rptr.2d 273.) When ordinary principles of contract interpretation do not resolve an ambiguity, the contract language should be construed against the party that drafted the language. (Civ. Code, § 1654.) This rule applies with special force to contracts of adhesion. (Neal v. State Farm Ins. Co. (1961) 188 Cal. App.2d 690, 695, 10 Cal.Rptr. 781; Badie v. Bank of America, supra, 67 Cal.App.4th at p. 803, 79 Cal.Rptr.2d 273.)
Applying these principles, we agree with the trial court's conclusion that the service of suit clause clearly states that Lloyd's agreed to consent to the court's jurisdiction "[i]n the event of the failure of Underwriters to pay any amount claimed to be due under the insurance...." To the extent that there is an unresolved ambiguity between the service of suit clause and the arbitration clause, that ambiguity must be resolved against Lloyd's, the drafter of the contract.
We conclude that the service of suit clause shows that Lloyd's agreed to consent to the court's jurisdiction for claims based upon the failure to pay. Since Boghos has asserted a claim based upon Lloyd's failure to pay, Lloyd's is subject to the court's jurisdiction, the arbitration clause is inapplicable, and the motion to compel arbitration was properly denied.
Lloyd's also argues that the trial court wrongly concluded that the arbitration clause was unconscionable. We disagree.
As already noted, besides deciding that the plain language of the policy showed *453 that Lloyd's consented to the court's jurisdiction, the trial court also decided that the agreement lacked mutuality based upon certain language under the service of suit clause. The language is as follows: "Nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States." Under the trial court's view, by permitting Lloyd's to commence, remove or transfer an action, the quoted language allowed Lloyd's to "opt out" of arbitration. Since the insurance policy granted no similar right to Boghos, the trial court decided the arbitration clause was unconscionable.
Relying upon the trial court's finding of unconscionability, Boghos contends that if Lloyd's policy provisions compel arbitration of his claims, then we should hold that the arbitration clause is unconscionable. If the policy is construed to prohibit Boghos from litigating his claims in court, then Boghos says the arbitration clause must be read in tandem with the reservation of rights language, and since the reservation of rights language allows Lloyd's to "opt out" of arbitration, there is a lack of mutuality, thereby rendering the arbitration clause unconscionable.
Lloyd's, on the other hand, contends that "[o]nce it is accepted that the consent to jurisdiction and reservation of the right to sue found in the service-of-suit clause refers only to the enforcement of arbitration awards and does not provide for litigation as an alternative to arbitration, it becomes clear that the service-of-suit clause did not give [Lloyd's] any greater right to litigate than [Boghos] was given."
As already discussed, we have interpreted the service of suit clause to provide that Lloyd's consents to the jurisdiction of the court for the purposes of claims based upon failure to pay. Thus, we necessarily reject Lloyd's argument since it is premised upon a contrary interpretation namely that the service of suit clause only applies to the enforcement of arbitration awards. Similarly, we necessarily reject Boghos's argument, since it is contingent upon us deciding that Lloyd's policy provisions compel arbitration of his claims.
We do note that Boghos's and Lloyd's arguments on this issue bolster our construction of the policy. By construing the service of suit clause to provide that Lloyd's consents to the jurisdiction of the court for purposes of claims based upon failure to pay, our interpretation forestalls in this case any lack of mutuality problems. In other words, since we have already decided that the policy permits Boghos to litigate his claims, the problem envisioned by Boghosthat he is required to arbitrate his failure to pay claims while Lloyd's under the reservation of rights clause has the option of choosing to litigate such claimsdoes not occur. In fact, by arguing that the agreement is not unconscionable so long as the service of suit clause is construed to pertain only to enforcement of arbitration, Lloyd's impliedly admits that the rejection of its interpretation results in the lack of mutuality found by the trial court.
Boghos also argues that the arbitration clause is unconscionable because it imposes prohibitive costs upon him. He relies upon the fact that the arbitration clause requires him to pay half of the costs of arbitration, and also upon the fact that excessive fees are imposed pursuant to the American Arbitration Association's Commercial Arbitration Rules.
In Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, the *454 California Supreme Court considered arbitration of claims brought under the Fair Employment and Housing Act (FEHA). The court held that when such an arbitration agreement is silent on costs, it would infer from that silence the existence of an agreement on the part of the employer to bear the arbitration forum costs. (Id. at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1082, 130 Cal.Rptr.2d 892, 63 P.3d 979.) In Little v. Auto Stiegler, Inc., the California Supreme Court confirmed that "Armendariz represents the soundest approach to the problem of arbitration costs in the context of mandatory employment arbitration." (Id, at p. 1085, 130 Cal. Rptr.2d 892, 63 P.3d 979.)
We believe that Armendariz/Little's recognition that "arbitration costs can present significant barriers to vindication of statutory rights" is also applicable in the situation here, where a disability claimant seeks to make the insurer pay disability benefits, and the insurer seeks to compel arbitration of those claims, and make the insured share the costs of arbitration. (Little v. Auto Stiegler, Inc., supra, 29 Cal.4th at p. 1084, 130 Cal.Rptr.2d 892, 63 P.3d 979.) In Ting v. AT & T (N.D.Cal.2002) 182 F.Supp.2d 902, 934, the court applied the Armendariz rule in the context of a consumer contract arbitration provision between AT & T and its customers. Ting quoted Armendariz for the proposition that "the arbitration agreement or arbitration process cannot generally require the [plaintiff] to bear any type of expense that [she] would not be required to if [she] were free to bring the action in court. [Citation]" (emphasis in original). (Ting v. AT & T, supra, 182 F.Supp.2d at p. 934, quoting Armendariz, supra, 24 Cal.4th at p. 110-111, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Because Boghos should not be forced to share in the cost of arbitration, we believe that Lloyd's arbitration clause, which requires that the parties split the costs, is unconscionable.[4]

DISPOSITION
The trial court's order denying the petition to compel arbitration is affirmed.
WE CONCUR: PREMO and WUNDERLICH, JJ.
NOTES
[1] The first paragraph of the service of suit clause provides: "Service of Suit Clause. In the event of the failure of Underwriters to pay any amount claimed to be due under the insurance described herein, Underwriters have agreed that, at the request of Assured (or Reinsured) they will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. In any suit instituted against any one of them upon the insurance described herein. Underwriters have agreed to abide by the final decision of such Court or of any Appellate Court in the event of an appeal."
[2] The full text of the arbitration clause is as follows: "BINDING ARBITRATION: Not withstanding any other item setforth herein, the parties hereby agree that any dispute which arises shall be settled in Binding Arbitration. By agreeing to Binding Arbitration, all parties acknowledge and agree that they waive their right to a trial by jury. Binding Arbitration will be held before a neutral arbitrator who will be agreed to by all parties. If the parties cannot agree as to the arbitrator, or believe that a single arbitrator cannot adequately settle the dispute, then an arbitration panel made up of three arbitrators shall be formed. One arbitrator shall be appointed by Us. The second arbitrator shall be appointed by You. The third arbitrator shall be agreed by the two appointed arbitrators. The venue shall be in Los Angeles County or at another location if agreed by all parties. The arbitration will be governed by the commercial arbitration rules of the American Arbitration Association. Costs for the arbitration shall be equally split among the parties." Boghos's insurance application also contained an arbitration provision that provides that disputes concerning the insurance be submitted to arbitration if the disputed amount exceeds the jurisdictional amounts for small claims courts and is not resolved after an Underwriters' review. This arbitration provision also contained a waiver of the right to jury trial. In its argument, Lloyd's focuses upon the insurance policy arbitration clause.
[3] Code of Civil Procedure section 1285 provides: "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. The petition shall name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award." Title 9 United States Code section 207 provides, in pertinent part: "Within three years after an arbitral award falling under the Convention is made, any party to an arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."
[4] Because we have already decided that Lloyd's is subject to the court's jurisdiction for Boghos's claims, and the arbitration clause is inapplicable, we need not decide whether or not the unconscionable costs provision within the arbitration clause is severable from the rest of the agreement. We also deny Lloyd's request for judicial notice. Lloyd's has asked that we take judicial notice of certain documents regarding Boghos's finances. Lloyd's says the documents are relevant to Boghos's claim that the arbitration clause is unconscionable because it requires the parties to pay their pro rata share of the arbitration costs. Since we decide the costs clause is unconscionable on a basis that does not necessitate examination of Boghos's finances, we necessarily deny Lloyd's request for judicial notice.